**SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,**

v.

**The OAKFORD CORPORATION, Edward J. Mueger, Inc., R.M. Carucci Corp., Touchdown Securities, Inc., MFS Securities Corp., Oakwood Securities Corp., D'Alessio Securities, Inc., William S. Killeen, Thomas S. Bock, Thomas J. Cavallino, Edward J. Mueger, Robert J. Carucci, Christine A. Beyer, Michael A. Frayler, Mark R. Savarese, John J. Savarese, and John R. D'Alessio, Defendants.**

**No. 98 Civ. 1366 (JSR).**

United States District Court,
S.D. New York.

Aug. 10, 1998.

Anthony Ragozino, Robert Heim, New York City, for SEC.

Dominic F. Amorosa, New York City, for John D'Alessio and D'Alessio Securities.

## OPINION AND ORDER

RAKOFF, District Judge.

Plaintiff Securities and Exchange Commission ("SEC") moves pursuant to Rule 41(a)(2), Fed.R.Civ.P., to voluntarily dismiss this action as to defendants D'Alessio Securities, Inc. and John R. D'Alessio (the "D'Alessio defendants") without prejudice. The D'Alessio defendants oppose unless the dismissal is with prejudice. The Court grants the dismissal without prejudice, but not without misgivings.

The controversy arises in the context of what are sometimes called "parallel proceedings." These originate when a civil enforcement agency such as the SEC and a criminal enforcement agency such as the United States Attorney's Office bring contemporaneous civil and criminal charges against the same defendant. While the effect of such parallel proceedings is to place the defendant in the jaws of a pincers, the government agencies are generally loathe to furnish discovery in the civil case until the criminal case is completed—for to do so would undercut the informational advantage enjoyed by the government in the criminal case.

Specifically, while the Federal Rules of Civil Procedure accord broad pretrial discovery to both sides, the Federal Rules of Criminal Procedure, though in no way impeding the broad discovery available to the government through the operations of the grand jury, narrowly limit the discovery available to the defendant. To preserve this advantage, the criminal enforcement agency (here the United States Attorney), typically at the invitation of the civil enforcement agency (here the SEC), intervenes in the parallel civil proceeding to request a stay of all discovery pending completion of the criminal case. Often the application is joined by the defendant as well, who otherwise confronts the prospect of expensive dual litigation and the dilemma either of having to testify in a pre-trial deposition or, by invoking the privilege against self-incrimination, subjecting himself to a permissible adverse inference in the civil case. *See Baxter v. Palmigiano*, 425 U.S.

308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

The initial proceedings in the instant case took this tack. Following filing of the criminal indictment on February 17, 1998, the SEC commenced the instant action on February 25, 1998, alleging that the same defendants (and others) were civilly liable for essentially the same conduct alleged in the indictment. At the initial conference before this Court on March 23, 1998, the defendants and the United States Attorney, as intervenor, moved for an extended stay of the civil case, a request to which plaintiff SEC announced it had no opposition. *See* March 23, 1998 transcript at 3. Although the Court questioned the parties' proffered rationales, *see id.* at, *e.g.*, 6–9, 16, it was ultimately persuaded to grant a sixty-day stay on the representation of the United States Attorney that further developments in the next thirty days would materially alter the shape of the case. *See id.* at 14.

Following the sixty-day stay, a second conference was convened on May 22, 1998, at which, with one minor exception,[1] neither the parties nor the intervening United States Attorney requested any further stay whatever. Moreover, although the United States Attorney was invited to apply for particularized protective orders if any aspect of the civil discovery threatened the integrity of the criminal case, *see* May 22, 1998 transcript at 19–20, she chose not to do so, then or thereafter. The Court being thus led to believe that the parties were in agreement that the case should go forward, a full discovery management plan was ordered.

Some two months later, however, on July 21, 1998, the SEC, faced with the prospect of actually providing initial discovery in this case in the form of responses to defendants' interrogatories, telephonically requested leave to move for a stay of those responses. The Court, while granting leave to the SEC to so move, again invited the SEC and the United States Attorney to move for protective orders more specifically directed at any particularized concerns they might have regarding the integrity of the criminal case.

---

1. One defendant, Robert Carucci, who had pled guilty in the criminal case, requested a stay of discovery as to him, which was denied. *See* May 22, 1998 transcript at 12–14.

Instead, however, the SEC, less than two days later, filed a stipulation dismissing the case without prejudice as to all defendants except (a) those defendants who had pled guilty and (b) the D'Alessio defendants (who had answered the Complaint on July 9 and July 13, 1998).

In light of this substantial reduction in the size of the case, the Court then convened an in-court conference on July 30, 1998 to revisit the case management schedule. *See* July 27, 1998 Order. At the outset of that conference, the SEC, without prior notice, moved to dismiss the D'Alessio defendants without prejudice despite their opposition. Following extensive oral argument, the Court received the further, written submissions (including a submission from the United States Attorney) that now render that motion ripe for decision.

■ The parties are in agreement that a court deciding a contested motion under Rule 41(a)(2) must expressly address all relevant factors, including, in particular, "[i] the plaintiff's diligence in bringing the motion; [ii] any 'undue vexatiousness' on plaintiff's part; [iii] the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; [iv] the duplicative expense of relitigation; and [v] the adequacy of plaintiff's explanation for the need to dismiss." *Zagano v. Fordham University*, 900 F.2d 12, 14 (2d Cir.1990); *see also D'Alto v. Dahon California*, 100 F.3d 281, 283–84 (2d Cir.1996).

■ Here, the first two factors favor the defendants. As is apparent from the foregoing account, the SEC never had any intention of providing discovery in this case but nonetheless permitted the case to proceed, thereby seeking the advantage of filing its charges without having to support them. The SEC justifies this result by asserting its reliance on the federal courts' alleged practice of routinely granting stays of such actions until parallel criminal cases are completed. *See* July 30, 1998 transcript at 18–22. This supposed reliance is unjustified, however, since existing case law makes plain that such stays, rather than being granted automatically, are to be assessed according to a multifactor test. *See, e.g., Trustees of Plumbers & Pipefitters*

*National Pension Fund v. Transworld Mechanical Inc.,* 886 F.Supp. 1134, 1139 (S.D.N.Y.1995); *Volmar Distributors, Inc. v. New York Post Co., Inc.,* 152 F.R.D. 36, 39 (S.D.N.Y.1993).

Moreover, as the SEC concedes, *see* July 30, 1998 transcript at 19, its supposition could no longer be entertained after the March 23 conference, when this Court, in granting an initial sixty-day stay, apprised the parties that, absent some further (and more persuasive) request for a stay, full discovery would commence after such period. Thus, during the sixty-day interim, it was incumbent upon the SEC to determine whether it wished to apply for a further stay, dismiss without prejudice (which it could then have done on its own motion since no defendant had yet answered), or proceed with discovery. By making no motion for stay or dismissal at the May 22 conference and, instead, expressly participating in the scheduling of full discovery, the SEC gave the Court and parties every reason to believe that it had elected the latter alternative. Only after the D'Alessio defendants had filed their Answers and prepared their responses to the SEC's own discovery requests did the SEC, facing the scheduled deadline for furnishing its own discovery to those defendants, turn about and bring the instant motion. It follows that the SEC not only failed to act with diligence but also engaged in "undue vexatiousness."

By contrast, the third and fourth factors favor the plaintiff. With respect to the third factor—"the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial"—the reciprocal effect of the SEC's determination not to provide discovery was that no aspect of discovery from any party had proceeded very far when the SEC brought the instant motion. As a result, the D'Alessio defendants are able to allege only very modest prejudice. To be sure, they argue that they have suffered prejudice from the very fact that the SEC's charges have been pending against them for more than five months—prejudice that they contend impacts not only their reputations but also their ability to do business. But throughout this period they would have suffered substantially the same

prejudice from the pendency of the parallel criminal charges, which will remain pending even if the SEC suit is dismissed.

The D'Alessio defendants also complain of the legal fees incurred in defending this lawsuit thus far, which they estimate as "several thousand dollars." July 30, 1998 transcript at 23. But they undoubtedly would have incurred most of those same expenditures in connection with preparing the defense of the parallel criminal litigation, and it is highly unlikely that their few expenses that might fairly be attributed solely to defense of the civil litigation have been substantial.[2]

Finally, while individual defendant John R. D'Alessio argues that he has suffered serious potential prejudice from having to file an Answer in this case in which, by invoking his Fifth Amendment privilege, he created the basis for an adverse inference against him, the SEC fairly responds that a dismissal under Rule 41(a)(2) can be conditioned on the withdrawal of that Answer and that the SEC here consents thereto. *See* Fed.R.Civ.P. 41(a)(2) (dismissal may be "upon such terms and conditions as the court deems proper"); *Hill v. W. Bruns & Co.*, 498 F.2d 565, 567 n. 2 (2d Cir.1974) (quoting *A.B. Dick Co. v. Marr*, 197 F.2d 498, 502 (2d Cir.1952)); 27 C.J.S. § 39 Dismissal and Nonsuit (1959 & Supp.1995).

In short, the modest progress of this lawsuit and the insubstantial prejudice suffered by defendants in discontinuing it at this time favor plaintiff's position as to the third factor. For similar reasons, the fourth factor likewise cuts in favor of the plaintiff, since relitigation of the case will involve very little expense that is duplicative of any expense already incurred in this action.

We come therefore to the fifth factor—the adequacy of plaintiff's explanation for the need to dismiss. At the hearing on July 30, the SEC vaguely suggested that the ultimate reason for seeking the dismissal was the SEC's determination that discovery would somehow compromise the criminal case, perhaps by exposing the identity of unknown informants. *See* July 30, 1998 transcript at 22–23, 34. In her subsequent letter supporting the instant motion, the United States Attorney further argued that, in any case, the Court should not permit defendants to gain discovery they otherwise could not have obtained if only the criminal case had been brought. *See* August 5, 1998 Letter at 1, 3–4.

None of these arguments is persuasive. To the extent that the defendants' discovery demands go beyond what would ordinarily be permitted in a civil case involving the same underlying circumstances, such demands are subject to being quashed. *See* Fed.R.Civ.P. 26(b)–(c). To the extent that such demands threaten the integrity of the criminal case in the sense of potential witness tampering (not even suggested here), informant exposure (only vaguely hinted), or the like, they are similarly subject to being narrowed or quashed upon an appropriate showing by the United States Attorney.[3] Yet, as noted earlier, neither the United States Attorney nor the SEC has ever requested any such particularized protective order at any stage of these proceedings despite the Court's invitation.

■ Finally, to the extent that the defendants' discovery requests simply result in the

---

2. Thus the Court need not reach the question of whether it can, or should, condition dismissal under Rule 41(a)(2) on the SEC's payment of the defendants' legal fees. *See Jewelers Vigilance Committee, Inc. v. Vitale, Inc.*, 1997 WL 582823, at *4 (S.D.N.Y.1997); *see also Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir.1985). *But see* 28 U.S.C. § 2412(d)(1)(A)–(B) (attorneys' fees awarded against government only upon showing that agency's position was substantially unjustified); 15 U.S.C. § 78aa (costs not to be awarded against SEC).

3. This is likewise true with respect to the SEC's somewhat belated additional suggestion that its

own ongoing investigation might be compromised by discovery in this case. That suggestion, moreover, is altogether vague and speculative. Specifically, the SEC's statement of this point at the July 30 hearing was as follows: "[T]he prejudice would result in relation to the ongoing investigations. It's not the fear of violence to witnesses. It's the fear of, as the Commission stated, our investigation is ongoing, the fear that revealing people too soon might substantially jeopardize uncovering other wrongdoing as the investigation progresses." July 30, 1998 transcript at 46.

happenstance that in defending themselves against the serious civil charges that another government agency has chosen to file against them they obtain certain ordinary discovery that will also be helpful in the defense of their criminal case, there is no cognizable harm to the government in providing such discovery beyond its desire to maintain a tactical advantage. As other courts have noted, mere tactical advantage, whether to one side or another, is not a proper basis on which a Court should determine a Rule 41(a)(2) motion. *See, e.g., United States v. One 1990 Artic Cat Ext Snowmobile,* 1996 WL 132107, at *1 (S.D.N.Y.1996); *Horton v. TWA,* 169 F.R.D. 11, 17 (E.D.N.Y.1996) (quoting 9 Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 2364, at 280–83 (2d ed.1995)); *Allen v. Indeck Corinth Limited Partnership,* 161 F.R.D. 233, 236 (N.D.N.Y.1995).

Accordingly, the fifth factor favors defendants. Thus, if the decision of this motion were simply a matter of counting factors, defendants would prevail, since the first, second, and fifth of the five factors weigh in favor of the defendants and only the third and fourth weigh in favor of the plaintiff. But a multifactor test is not intended as an exercise in arithmetic. Its purpose is to make certain that a district court, in making a determination ultimately reserved to its discretion, expressly considers those concerns identified by the Court of Appeals as inherently relevant. It does not mean that each such concern must be accorded the same weight, or that still other concerns may not in the end be significant.

In many cases, as several courts have noted, the concern that often weighs most heavily with a court deciding whether or not to grant a Rule 41(a)(2) motion is whether the dismissal will substantially prejudice the defendants. *See, e.g., Wakefield v. Northern Telecom, Inc.,* 769 F.2d 109, 114 (2d Cir.1985) (holding that a voluntary dismissal without prejudice will be allowed "if the defendant will not be prejudiced thereby."); *Jewelers Vigilance Committee,* 1997 WL 582823, at *2. Here, the Court cannot escape the conclusion that any actual prejudice suffered by the D'Alessio defendants in granting the SEC's motion will be minimal. If anything, it is the SEC that will suffer the greatest prejudice if

the Court grants its motion, since the statute of limitations—the running of which was, according to the SEC, one of the factors in its decision to bring this case when it did, *see* July 30, 1998 transcript at 16–18—will no longer toll.

This is not to overlook the troubling manner in which the SEC (and, in the background, the United States Attorney) proceeded in this case. To use the federal courts as a forum for filing serious civil accusations that one has no intention of pursuing until a parallel criminal case is completed is a misuse of the processes of these courts. In the particular circumstances of this case, however, it appears more equitable to dismiss the suit without prejudice at this time and to put the SEC and the United States Attorney's Office on notice that such doubtful practices will receive strict scrutiny in the future.

For the foregoing reasons, the Court grants the motion of the plaintiff Securities and Exchange Commission to voluntarily dismiss this action without prejudice as to defendants D'Alessio Securities, Inc. and John R. D'Alessio, conditioned on those defendants' Answers in this action being withdrawn and nullified. Any future refiling against any of the defendants in this case who have been dismissed without prejudice should be deemed a related case and referred to this judge.

SO ORDERED.