### SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

**Anuradha D. SAAD, Richard P. Adelson, David J. Cammarata, Peter Torres, Robert McKie, Karin Gardner, and Kenneth Jugan, Defendants.**

No. 05 Civ. 3308(JSR).

United States District Court, S.D. New York.

July 23, 2005.

David Paul Stoelting, Mark K. Schoenfeld, Raymond Joseph Lohier, Jr., U.S. Attorney's Office, New York City, for Plaintiff.

Peggy M. Cross, Stillman and Friedman, New York City, for Defendant, Anuradha D. Saad.

Mark S. Arisohn, Michele C. Cerullo, Goodkind Labaton Rudoff & Sucharow LLP, New York City, for Defendant, Richard P. Adelson.

## MEMORANDUM

RAKOFF, District Judge.

On March 29, 2005, the Securities and Exchange Commission ("SEC") filed a Complaint accusing the defendants of engaging in a fraudulent scheme to inflate the reported financial results of IMPATH, Inc. ("Impath"), a public company. *See* Complaint, ¶ 1. While four of the defendants quickly settled the case, the two lead defendants—Saad and Adelson—denied the allegations and sought to clear their names. Both sides announced their readiness to proceed expeditiously, so as to resolve this dispute, as they were entitled to do.

But the U.S. Attorney's Office, though not a party to this proceeding, had a different view. One day prior to the commencement of this civil case, a grand jury had returned an indictment charging Saad and Adelson with various criminal violations arising from essentially the same allegations set forth in the SEC's complaint. *See United States v. Saad and Adelson*, 05 Cr. 325 (S.D.N.Y.). Shortly thereafter, the U.S. Attorney's Office, with the permission of the Court, intervened in the instant civil suit for the purpose of seeking a stay of the suit pending resolution of the criminal case. The U.S. Attorney's basic rationale was that, if discovery were permitted to proceed in the civil action, Saad and Adelson would be permitted, under the Federal Rules of Civil Procedure, to obtain more discovery about the underlying events than they would be able to obtain in the criminal case under the Federal Rules of Criminal Procedure.

Although applications for a stay similar to the one here made by the U.S. Attorney are not uncommon in such "parallel proceedings" situations, they are not without their bizarre aspects. It is bewildering enough that Congress has decreed that, even though someone facing the potentially ruinous financial penalties of an SEC civil complaint should be accorded substantial discovery in order to defend herself, the same defendant facing the even more severe penalties of a criminal action should barely receive any discovery at all. But it is stranger still that the U.S. Attorney's Office, having closely coordinated with the SEC in bringing simultaneous civil and criminal actions against some hapless defendant, should then wish to be relieved of the consequences that will flow if the two actions proceed simultaneously.

In any event, the Court, for reasons it had already explained in prior rulings, *see, e.g., Securities and Exchange Commission v. The Oakford Corporation*, 181 F.R.D. 269 (S.D.N.Y.1998), denied the motion of the U.S. Attorney's Office seeking a general stay of discovery in the SEC case. The Court was persuaded, however, to postpone until after the completion of the criminal trial (which is also assigned to this judge and which is firmly scheduled to begin on November 1, 2005) the civil depositions of the six defendants, two of whom are the defendants in the criminal case and the other four of whom are the Government's chief witnesses in the criminal case. Although it was the U.S. Attorney's Office that sought this accommodation, it makes perfect sense in terms of the civil case, since, until the criminal case is resolved, there is a high likelihood that invocations of the Fifth Amendment privilege will play havoc with the orderly conduct of all six of these depositions.

By contrast, as the Court ascertained definitively at the outset of the case, none of the six defendants will be invoking any Fifth Amendment privilege with respect to the act of producing documents, and hence there is no reason why full document discovery, as well as depositions of the non-parties, cannot proceed at this time, enabling the Court to have the civil case ready for trial within a few weeks after the completion of the criminal case.

Although the Court regards this as a very fair resolution of the competing concerns voiced in connection with these parallel proceedings, recently the U.S. Attorney's Office, as intervenor in this civil action, sought somewhat to change the balance by requesting the SEC not to turn over to counsel for Saad and Adelson certain documents that the SEC had already determined should be produced to those defendants as part of the document discovery in this case. The SEC then sought guidance from the Court, which conducted a hearing on July 8, 2005, at which the Government substantially modified its view and acquiesced in the production to the defendants of all the documents in issue except for certain handwritten notes made by an Impath employee, seemingly reflecting conversations he had with one or more of the now-cooperating defendants in the summer of 2003, apparently when they were being questioned as part of an internal Impath investigation. As to these notes, the Court, after hearing argument from counsel, reserved decision until it could more carefully examine the notes *in camera.* Having done so, however, the Court, on July 15, 2005 issued a bottom-line order, directing the SEC to turn over these notes to defense counsel (subject to an appropriate protective order, which the parties subsequently negotiated and the Court signed) and indicating that this Memorandum would shortly follow setting forth the reasons for this ruling. *See* Order, July 15, 2005.

From the foregoing account, the reasons for the Court's ruling in the July 15 Order are obvious: there is simply no good reason why these documents, which are patently relevant to the civil case and which the SEC was prepared to turn over to the defendants without hesitation, should not be turned over. The U.S. Attorney's Office says that it would eventually be turning over these notes in the criminal case as part of its broad view of what constitutes Jencks Act material of its cooperating witnesses, and it has previously committed to turn over all Jencks Act material well in advance of the criminal trial. Its argument thus reduces to the near-frivolous position that, in some wholly speculative way, it would be prejudiced by having the SEC give these notes to the defendants a month or two sooner than they would otherwise receive them.

Moreover, it is doubtful that the notes in question are Jencks Act material, since they do not appear to be substantially verbatim statements of the interviewees. *See* 18 U.S.C. § 3500(e) (defining what is a Jencks Act statement). They may, however, well be *"Brady"* material that the Government might well be required to turn over sufficiently before trial to enable the defense to make meaningful use of them.

More fundamentally, however, all these considerations are secondary, because the notes are unquestionably relevant to the defense of the civil case, both on their face and in terms of preparing for the upcoming depositions of the non-party witnesses (including, very likely, the author of the notes). Indeed, if the Court were to grant the U.S. Attorney's Office request as to these and any other such documents, it would have to seriously curtail the ongoing document discovery and third-party depositions that it previously ordered.

The U.S. Attorney's argument, therefore, boils down in the end to its standard complaint that the defendants are getting a "special advantage" because, if they were only facing a criminal indictment, they would not be entitled to these notes at this time. But the defendants are not just facing a criminal indictment; they are also facing a very serious SEC civil action, and they are thus fully entitled to the timely discovery that federal law grants them in defending such an action.