SECURITIES & EXCHANGE COMMISSION, Plaintiff,

v.

Henry T. NICHOLAS, III, Henry Samueli, William J. Ruehle, and David Dull, Defendants.

Case No. SACV 08–00539–CJC(RNBx).

United States District Court, C.D. California, Southern Division.

Aug. 4, 2008.

---

8. *See Madison,* 474 F.3d at 131–32. See also our discussion, *supra* at section II.

Junling Ma, Finola Manvelian, Marshall S. Sprung, Molly M. White, United States Securities and Exchange Commission, Los Angeles, CA, for Plaintiff.

Seth A. Aronson, James R. Asperger, Katherine L. Buchanan, Louise C. Chen, J. Jorge DeNeve, O'Melveny and Myers LLP, Jack P. DiCanio, Lavanya Mahendran, Richard Marmaro, Matthew Eric Sloan, Matthew Donald Umhofer, Skadden Arps Slate Meagher and Flom LLP, Los Angeles, CA, George A. Borden, Kevin M. Downey, Barry S. Simon, Brendan V. Sullivan, Jr., Negar Tekeei, Lance A. Wade, Williams and Connolly LLP, Washington, DC, James D. Riddet, Stokke & Riddet, Santa Ana, CA, for Defendants.

Robb Christopher Adkins, Andrew D. Stolper, AUSA–Office of U.S. Attorney, Santa Ana, CA, for Intervenor.

### ORDER GRANTING THE USAO'S MOTION TO INTERVENE AND MOTION TO STAY

CORMAC J. CARNEY, District Judge.

The United States of America, by and through the United States Attorney's Office for the Central District of California (the "USAO"), seeks to intervene in this

civil enforcement action (the "civil case") by the Securities and Exchange Commission ("SEC") against former Broadcom executives Henry T. Nicholas, III, Henry Samueli, William J. Ruehle, and David Dull.[1] Particularly, the USAO moves to intervene in order to stay discovery and other proceedings with respect to Defendants Nicholas and Ruehle, who also face criminal charges related to the same underlying conduct, *United States of America v. Nicholas et al,* 8:08–cr–00139–CJC, (the "criminal case"). The USAO urges the Court to enter a stay on two grounds: the public interest favors staying discovery to prevent Defendants Nicholas and Ruehle from impermissibly using civil discovery to their benefit in the criminal case; and the parties and the Court should not be burdened by civil discovery matters during the pendency of the criminal case. Defendants Nicholas and Ruehle oppose the stay, contending it deprives them of their right to discovery in government-initiated civil proceedings, and that the USAO has not met its burden of justifying a special need for the stay.

The Court finds that entering a complete stay of the civil proceedings is the most prudent course under the circumstances. The criminal case is of paramount importance not only to the criminal defendants, but to the public and the Court. Allowing for competing civil and criminal cases to proceed simultaneously would undermine the public's right to fair and efficient prosecution of its criminal laws, distract the Defendants and the USAO from fully preparing their respective cases, and divert the Court's attention with burdensome discovery litigation and duplicative law and motion. Contrary to their assertion, Defendants Nicholas and Ruehle do not need discovery in the civil case to mount a full and fair defense to the charges in the criminal case. Accordingly, the civil case will be stayed pending resolution of the criminal case.

## BACKGROUND

On May 14, 2008, the SEC charged Defendants Nicholas, Samueli, Ruehle and Dull "for their alleged participation in a five-year systematic scheme to backdate stock options granted to virtually all Broadcom officers and employees." (Declaration of Matthew D. Umhofer ("Umhofer Decl.") ¶ 4, Ex. 3.) The complaint alleges twelve causes of action for fraud in the offer or sale of securities, fraud in connection with the purchase or sale of securities, proxy violations, falsification of records, false statements to accountants, false certification, equity beneficial ownership reporting violations, violations of SEC periodic reporting requirements, record-keeping violations and internal control violations. (Complaint ¶¶ 89–130.) The SEC seeks injunctive relief against the Defendants as well as disgorgement, civil penalties, and relinquishment of bonuses and stock sale proceeds. (*See id.* at p. 36–37.)

Several weeks later, on June 5, 2008, the USAO unsealed a criminal indictment against Dr. Nicholas and Mr. Ruehle charging them with "engaging in a stock-option backdating scheme that forced Broadcom to write-down $2.2 billion in profits." (Umhofer Decl. ¶ 3, Ex. 2.) The indictment charges Defendants Nicholas and Ruehle with conspiracy, securities fraud, false certification of financial reports, false statements in reports mailed to the SEC, lying to accountants, falsification of corporate books and records, and honest services mail and wire fraud. (*Id.*) In a second indictment, Dr. Nicholas was also

---

**1.** The SEC has filed a statement of non-opposition to the USAO's motion to intervene and stay. (Docket Entry 50, 7/21/08.)

charged with federal narcotics crimes. (*Id.*) On June 23, 2008, Dr. Samueli pleaded guilty to one count of making a false statement to the SEC and his sentencing is currently pending before this Court. Mr. Dull has not been criminally charged with respect to his conduct at Broadcom.

At a July 1, 2008 status conference on both criminal cases, the Court set an April 7, 2009 trial date in the stock options backdating case and a November 10, 2009 trial date in the narcotics case. No trial or other case management dates have been set in the civil case.

## THE USAO'S MOTION TO INTERVENE

The Court must first determine whether the USAO may intervene in the civil case.[2] The USAO has satisfied the procedural requirements of permissive intervention under Federal Rule of Civil Procedure 24(b). *See Greene v. United States,* 996 F.2d 973, 978 (9th Cir.1993). There are many common questions of law and fact in the civil and criminal cases because the same option grants form the basis of both actions. FED.R.CIV.P. 24(b)(1)(B); *see infra,* p. 1070, n. 6 (listing common claims and charges); *see also SEC v. Health-South Corp.,* 261 F.Supp.2d 1298, 1326 (N.D.Ala.2003) (finding common questions of law and fact between a SEC civil enforcement matter and a related criminal proceeding); *SEC v. Mersky,* Civ–a–93–5200, 1994 WL 22305, at *2 (E.D.Pa. Jan. 25, 1994) (same). The USAO's motion to intervene is timely, filed less than one week after the initial status conference in the criminal case and promptly upon the Court's invitation to do so. *Cf. United States v. Washington,* 86 F.3d 1499, 1503 (9th Cir.1996) (explaining that "any sub-stantial lapse of time weighs heavily against intervention"). And finally, the USAO has an independent jurisdictional ground for intervention under 28 U.S.C. § 1345. *Bureerong v. Uvawas,* 167 F.R.D. 83, 86 n. 6 (C.D.Cal.1996).

■ Upon finding the USAO's proposed intervention procedurally proper, the Court must determine whether the USAO should be permitted to intervene. In reaching this decision, "the court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED.R.CIV.P. 24(b)(3); *see Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 472 (9th Cir.1992). Any undue delay or prejudice perceived here does not flow from the intervention, but instead from the proposed stay. *See Bureerong,* 167 F.R.D. at 86 n. 7. Moreover, numerous courts have allowed the United States government to intervene in a civil case for the purpose of moving to stay discovery and other proceedings until the resolution of a related criminal case. *See, e.g., SEC v. Chestman,* 861 F.2d 49, 50 (2d Cir.1988) (per curiam); *SEC v. Offill,* 3:07–cv–1643–d, 2008 WL 958072, slip op. at *5 (N.D. Tex. April 9, 2008); *Health-South Corp.,* 261 F.Supp.2d at 1330; *SEC v. Beacon Hill Asset Mgmt.,* 02–civ–8855(LAK), 2003 WL 554618, at *2 (S.D.N.Y. Feb. 27, 2003). Accordingly, the USAO's motion to intervene in the civil case is granted.

## THE USAO'S MOTION TO STAY DISCOVERY IN THE CIVIL CASE

■ The USAO moves to stay discovery and other proceedings in the civil case with respect to Defendants Nicholas and

---

**2.** It appears Mr. Ruehle does not oppose the USAO's motion to intervene. Dr. Nicholas, however, opposes the motion to intervene, arguing that the USAO has not demonstrated the necessity of a stay, thus invalidating the very basis for its intervention. (Nicholas Opp'n at 8 n. 7.)

Ruehle. (*See* USAO Mtn. at 7, 13.) A district court has discretion to stay a civil action in favor of parallel criminal proceedings if a stay is in the "interest[ ] of justice." *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir.1995) (*citing SEC v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C.Cir.1980)); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants.") The factors that may be considered in this regard are: "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; . . . (5) the interest of the public in the pending civil and criminal litigation;" and (6) the defendant's Fifth Amendment rights. *Keating*, 45 F.3d at 324–25.

At the outset, the Court notes a number of problems with litigating the civil case at the same time as the criminal case. First, the volume of discovery in the civil case is massive; its breadth and complexity is almost certain to cause delay in the criminal case. *See Nelson v. Capital One Bank*, 206 F.R.D. 499, 500 n. 1 (N.D.Cal.2001) (describing the complex issues and burdensome litigation that may result from civil discovery). The SEC's two-year long investigation covered a five-year period at Broadcom, encompassed eighty-eight options grants, and resulted in twelve claims of securities fraud. (*See* Complaint; Nicholas Opp'n at 3.) Document production will range well into the millions of pages, including Broadcom's public filings, corporate records, corporate minutes, email messages, correspondence and many other documents related to the company's options granting and compensation practices.[3] The total number of potential witnesses may range between seventy-five and 100, each subject to deposition attended by counsel for the Defendants, the SEC, and the USAO. Civil discovery will thus require the devotion of substantial resources both by the parties, in reviewing documents, propounding and responding to discovery, and taking and defending depositions, and by the Court in resolving the myriad of disputes that are likely to arise.

Second, parallel proceedings will undoubtedly implicate the Fifth Amendment rights of the parties and witnesses.[4] *See generally* Milton Pollack, *Parallel Civil & Criminal Proceedings*, 129 F.R.D. 201, 205–06 (1989) (describing a defendant's Fifth Amendment concerns with respect to parallel civil and criminal proceedings);

---

**3.** (*See, e.g.*, Nicholas Opp'n at 4–5 (arguing that the SEC and USAO "shared millions of pages of documents" during their parallel investigations); Ruehle Opp'n at 3 (stating that Broadcom's internal audit of the company's stock options granting process required the review of "six million pages of documents and electronic information, and interviewed more than 40 individuals")).

**4.** The Court notes that Mr. Ruehle emphatically states that he "does not seek the Court's protection of his Fifth Amendment rights...." (Ruehle Opp'n at 16.) While the Court will not construe this statement as a waiver of Mr. Ruehle's Fifth Amendment rights, the strong possibility that other Defendants and witnesses will assert their Fifth Amendment rights would make the discovery process illusory and unproductive regardless of Mr. Ruehle's stated ability to guard his own Fifth Amendment interests.

*see also Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (explaining that the Fifth Amendment does not forbid adverse inferences against parties to civil actions). For example, Dr. Nicholas has already asserted his Fifth Amendment privilege when issued a subpoena to testify before the SEC. (*See* Declaration of Lance A. Wade ¶ 17, Ex. 16.) If civil discovery commenced, Dr. Nicholas would be subject to immediate deposition, potentially delving into allegations of drug use while serving as Broadcom's CEO, at which time he would, according to his counsel at oral argument, assert his Fifth Amendment privilege again.[5] *See* Fed.R.Civ.P. 26(b)(1) (defining the scope of discovery as anything that is "reasonably calculated" to lead to the discovery of admissible evidence). Through counsel, Dr. Samueli, too, has informed the Court that he will consider asserting his Fifth Amendment privilege in light of his guilty plea to a single count of making a false statement to the SEC. Likewise, a number of witnesses may also assert their Fifth Amendment privilege if noticed for deposition, Nancy Tullos being just one example. The specter of parties and witnesses invoking their Fifth Amendment rights would render civil discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the Defendants.

And finally, the civil and criminal cases are inextricably intertwined and cannot reasonably proceed independent of each other. *Cf. Parallel Civil & Criminal Proceedings,* 129 F.R.D. at 203 (observing that "the most important factor [in ruling on a motion to stay] is the degree to which the civil issues overlap with the criminal issues" and concluding that a stay should not issue when the civil and criminal issues do not overlap). The SEC complaint and criminal indictment concern a number of identical options grants and practices.[6] Both documents allege identical fraudulent conduct with respect to acquiring companies for the purpose of bestowing backdated options on prospective employees. (*Compare* Complaint ¶ 26 *with* Indictment ¶¶ 69–73 (describing the acquisition of Newport Communications)). Likewise, both the SEC complaint and the criminal indictment reference identical books and records and reporting violations. (*Compare* Complaint ¶ 73 *with* Indictment ¶¶ 129–31 (form 10-k filings)). Given the high degree of overlap and interrelatedness of the cases, dual litigation does not serve the interests of efficiency or judicial economy. This is concern is particularly acute with respect to the threat of inconsistent judgments if the Court and/or the jury is asked to resolve issues that are common between both actions. *See In re Adelphia Communications Sec. Litig.,* No. 02–1781, 2003 WL 22358819, at *6–7 (E.D.Pa. May 13, 2003). Finally, collateral estoppel in the criminal case may expedite the resolution of the civil case. *See Emich Motors Corp. v. Gen. Motors Corp.,* 340 U.S. 558, 569–69, 71 S.Ct. 408, 95 L.Ed. 534 (1951) ("It is well established that a

---

**5.** On a related note, Dr. Nicholas' deposition testimony related to drug use at Broadcom, or his invocation of the Fifth Amendment privilege with respect to those questions, would undoubtedly create the very pre-trial publicity his counsel sought to prevent by arguing that the stock options case should go to trial before the drug case.

**6.** (*Compare* Complaint ¶ 28 *with* Indictment ¶¶ 50–55 (May 26, 2000 focal grant); Complaint ¶¶ 37–38 *with* Indictment ¶¶ 86–94 (October 1, 2001 grant); Complaint ¶¶ 39–40 *with* Indictment ¶¶ 95–100 (October 19, 2001 grant); Complaint ¶¶ 41–44 *with* Indictment ¶¶ 101–09 (December 24, 2001 grant); Complaint ¶¶ 54–60 *with* Indictment ¶¶ 112–15 (July 3, 2002 focal grant)).

prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding."); *United States v. $47,890 in Canadian Currency,* 804 F.2d 1085, 1089 (9th Cir.1986) ("A criminal conviction may result in forfeiture, rendering civil proceedings unnecessary.") Thus, any law and motion with respect to the underlying issues, conduct and charges should be litigated in a single proceeding, not competing ones.

Defendants Nicholas and Ruehle advance two arguments in opposition to the USAO's motion which other courts have found persuasive. *See, e.g., SEC v. Saad,* 229 F.R.D. 90, 91 (S.D.N.Y.2005); *SEC v. Oakford Corp.,* 181 F.R.D. 269, 272–73 (S.D.N.Y.1998). First, Defendants Nicholas and Ruehle argue against a stay because the very problem the USAO seeks to prevent—simultaneous civil and criminal proceedings—is of the government's own creation. *See Saad,* 229 F.R.D. at 91 (criticizing the USAO for coordinating with the SEC to bring simultaneous civil and criminal cases, but then attempting to evade the consequences of their litigation strategy). Defendants suggest that the SEC and USAO initiated these proceedings with great public fanfare in order to gain a tactical and public relations advantage over the Defendants. If the government was worried about protecting the legitimacy of the criminal process, the argument continues, it should not have pursued the civil case. This argument, however, overlooks the important purpose of the SEC to protect the integrity of the public markets and ensure truthful corporate disclosures. *See Dresser,* 628 F.2d at 1371; *Krull v. SEC,* 248 F.3d 907, 915 (9th Cir.2001) (noting that one of the key purposes of the Securities and Exchange Act is to "protect the public interest by insuring the stability of the markets and integrity of representation by its participants"). Upon discovering securities violations, it is the duty of the SEC to bring civil enforcement actions and seek injunctive relief to prevent continuing violations. Should the SEC forego civil enforcement proceedings in deference to criminal prosecution, numerous violations would become time-barred during the pendency of the criminal case. *See* 28 U.S.C. § 2462 (setting a five-year limitations period for "the enforcement of any civil fine, penalty or forfeiture").[7] Accordingly, the SEC was obligated to pursue civil violations expeditiously, independent of the criminal charges that were returned several weeks later. *See also United States v. Kordel,* 397 U.S. 1, 11, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970) (stating that it would "stultify enforcement of federal law" to require an administrative agency to chose between recommending a matter for criminal prosecution or deferring civil proceedings).

■ Defendants Nicholas and Ruehle also argue that USAO is moving for a stay to preclude them from using wide-ranging civil discovery rules to their benefit, and leaving them only with the more restrictive criminal discovery rules to build their defense. *See Oakford Corp.,* 181 F.R.D. at 272–73 (finding no cognizable harm to the USAO from a criminal defendant's use of civil discovery in a proceeding initiated by another government agency). While the Court cannot disagree that the civil rules allow for significantly broader discovery than their criminal counterparts, the criminal rules were not designed with the intention of stymieing a defendant's ability to mount a complete defense. *SEC v. Downe,* 92–civ–4092(PKL), 1993 WL 22126, at *12–13 (S.D.N.Y. Jan. 26, 1993). Rather, they are purposefully limited so as

---

7. (*See also* Nicholas Mtn. to Dismiss, Docket Entry 44, at 1 (moving to dismiss the SEC charges because "nearly all of the alleged violations are time-barred")).

to prevent perjury and manufactured evidence, to protect potential witness from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment.[8] *Campbell v. Eastland,* 307 F.2d 478, 487 n. 12 (5th Cir.1962), *cert. denied* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963). With that understanding, a number of courts have rejected a criminal defendant's attempt to use civil discovery mechanisms to obtain disclosures that are otherwise unavailable under the criminal rules. *See Mersky,* 1994 WL 22305, at \*2; *see also In re Application of Eisenberg,* 654 F.2d 1107 (5th Cir.1981); *United States v. Mellon Bank, N.A.,* 545 F.2d 869 (3d Cir.1976); *Robertson v. Qadri,* C06–04624–JF(HRL), 2008 WL 162530, slip op. at \*2 (N.D.Cal. Jan. 17, 2008); *Downe,* 1993 WL 22126, at \*12–13; *Fed. Reserve Sys. v. Pharaon,* 140 F.R.D. 634, 641 (S.D.N.Y.1991). The Court therefore disagrees with Defendants Nicholas and Ruehle's suggestion that the USAO seeks to play by the rules that suit it best. To the contrary, the USAO moves to impose the discovery obligations upon the criminal defendants that are designed to protect the integrity and truth-seeking function of the criminal process. *See Morris v. Am. Fed'n of State, County & Mun. Employees,* 2001 WL 123886, at \*2 (S.D.N.Y. Feb. 9, 2001) ("The public has an interest in ensuring the criminal discovery process is not subverted.")

■ After carefully considering Defendants' concerns and the factors enumerated by the Ninth Circuit in *Keating,* the Court concludes that a complete stay of the civil case is in the best interest of justice.[9] The criminal case is of primary importance to the public, the Defendants, and the Court. At the time these charges were filed, Broadcom's $2.2 billion charge against earnings "was the largest restatement ... arising from stock option backdating" in our country's history. (*See* Umhofer Decl. ¶ 6, Ex. 5.) The public has a vital interest in the integrity of public markets, efficient punishment of wrongdoers, and deterrence of similar conduct by other corporate officers. *See Campbell,* 307 F.2d at 487 ("Administrative policy gives priority to the public interest in law enforcement."). That interest is best served by resolving the criminal case in the most expeditious manner possible. The criminal case is also of greater relative importance to the named Defendants. As a result of these criminal charges, Defendants Nicholas and Ruehle face substantial terms of imprisonment if convicted on all counts, perhaps for the remainder of their natural lives. (*See* Umhofer Decl. ¶ 3, Ex. 2 (USAO press release stating that the "combined charges result in a maximum possible sentence of 340 years for Nicholas

---

8. The Court does not suggest that the Defendants seek civil discovery for an illegal or unethical purpose. However, the Court recognizes that the criminal discovery rules were crafted with an eye toward fairness for all concerned—the defendant, the prosecution, and the public. The Court rejects any implication that leaving Defendants with only criminal discovery mechanisms somehow prejudices their defense.

9. Although the USAO does not move to stay the civil case with respect to Defendants Samueli and Dull, the Court does so *sua sponte.*

*See SEC v. Chestman,* 861 F.2d 49, 50 (2d Cir.1988) (per curiam); *Crown Cent. Petroleum Corp. v. Dep't of Energy,* 102 F.R.D. 95, 98–99 (D.Md.1984) (*citing Landis,* 299 U.S. at 254–55, 57 S.Ct. 163). Defendants Samueli and Dull may move the Court to lift the stay with respect to each of them, should they so choose. In addition, the hearing on Dr. Nicholas' motion to dismiss the civil case, currently scheduled for August 11, 2008 at 1:30 p.m., is hereby vacated and off-calendar in light of the stay.

and 370 years for Ruehle"). Staying the civil case, which carries only civil sanctions and monetary penalties, is not of an equally pressing nature. And finally, the Court has a substantial interest in protecting Defendants Nicholas and Ruehle's constitutional right to a fair trial in the criminal case. *See Press–Enter. Co. v. Superior Court of Cali, Riverside County,* 464 U.S. 501, 508, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) ("No right ranks higher than the right of the accused to a fair trial.") Managing a competing civil case, and the burdensome discovery disputes and law and motion that would go along with it, can only distract the Court from devoting its attention to the criminal case.

Accordingly, the foremost concern of the Court is for the parties to devote their time, energy and resources toward preparing for the criminal trial. The Court has set trial for April 7, 2009. The USAO has informed the Court that it is preparing to provide Defendants Nicholas and Ruehle with "voluminous disclosure under Rule 16." (USAO Reply, 8.) The USAO also intends to disclose SEC testimony, statements made by individuals during Broadcom's internal investigation and all other documents collected by the SEC during the course of its investigation. (*Id.*) Consistent with the Court's statements at the July 1, 2008 status conference, the USAO is further encouraged to disclose any additional *Brady* and Jencks Act material to the Defendants at the earliest practicable time so as to prevent any delay in the criminal trial. To that end, the Court will entertain a motion by Dr. Nicholas and/or Mr. Ruehle at the January 2009 status conference to lift the stay order in the civil case if the USAO has not complied with its criminal discovery obligations or the Court's directive.